## GERALDINE WILLMUS v. RAY JORDAN & SONS, INC., AND ANOTHER.

178 N. W. (2d) 884.

July 17, 1970—No. 42017.

*Lewis L. Anderson,* for appellant.

*O. A. Brecke* and *J. Robert Nygren,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

OTIS, JUSTICE.

This action is brought by a landowner to recover the agreed price of peat and topsoil which defendant Ray Jordan & Sons, Inc., contracted to remove from plaintiff's premises. The trial court awarded plaintiff $10,099 against which it offset the sum of $5,460 awarded Jordan as damages for plaintiff's breach of contract. Plaintiff appeals from the judgment and defendants[1] seek review under Rule 106, Rules of Civil Appellate Procedure.

It is plaintiff's position that the evidence does not sustain defendant Jordan's offset. Defendants concede that the trial court was in error with respect to its award on the counterclaim, but assert that the contract was automatically terminated and Jordan relieved of further obligation by virtue of action taken by plaintiff which the trial court found was a breach of contract.

On September 4, 1963, plaintiff and Jordan entered a written agreement by the terms of which Jordan undertook to remove peat mixed with topsoil and clay from a 42-acre tract owned by plaintiff near 2480 North Cleveland Avenue in the village of Roseville. The agreed price for the materials removed was 25 cents a cubic yard. If the payment made to plaintiff by July 15 in each of three succeeding years in 1964, 1965, and 1966 did not exceed $5,000, Jordan was to pay plaintiff the difference between the amount paid and $5,000. The following provisions of article IV and article XII of the contract bear on the issues here for decision:

Article IV. "The buyer agrees to commence mixing and removing materials during the balance of the 1963 season. Buyer further agrees to remove the peat located on the north end of the property first. He further agrees to work toward the Southeast

---

[1] United States Fidelity and Guaranty Company, the other defendant, furnished Jordan a performance bond required by its contract with plaintiff.

corner of the property so that by January 1st, 1965, all of his operation is confined to an area located on the Southeast corner of the Willmus farm. The Willmus farm consists of roughly 42 acres located near 2480 North Cleveland, Village of Roseville, Ramsey County, Minnesota. It is understood that the specific area to which the buyer is restricted will be that area inside a rectangle which is formed when a line is drawn from the Southeasterly most point in the Willmus farm West along the property line 500 feet, then North 800 feet then East 500 feet and then South 800 feet to the point from which the line was commenced."

Article XII. "The seller shall have the right to terminate this contract at any time by sale or lease of the real property involved. A sale or lease of a portion of the property consisting of some 42 acres which is not being used and will not be used for the operation to be engaged in by the buyer will not constitute termination of the contract."

On October 7, 1963, Jordan entered an agreement with one Ray O'Connell authorizing him to remove from plaintiff's property peat and topsoil for which O'Connell was to pay Jordan 30 cents per cubic yard. Pursuant to these arrangements, both Jordan and O'Connell removed peat during the year 1964.

The first annual payment was made by Jordan on or about July 15, 1964.

The events which gave rise to Jordan's counterclaim occurred in the spring and summer of 1964 when plaintiff sold from the property a tract of 10 acres for the construction of a building to be used in the trailer business. In addition, an easement was granted to the village of Roseville for the construction of a roadway across the center of the land. Toward the end of that year, plaintiff sold to her son all but 4 remaining acres. As a result of the sales, Jordan was required to move its operation to the southeast tract some 6 months before the time specified in the contract. In the spring of 1965, Jordan removed its equipment and thereafter took no more peat and topsoil from the premises. O'Connell, however, continued to remove peat.

The facts found by the trial court are summarized as follows: The sale by plaintiff of the southerly 10 acres removed approximately two-thirds of the area in the southeast corner described in article IV of the contract. However, Jordan made no complaint to plaintiff nor claimed any breach of agreement, although plaintiff in addition gave the village of Roseville a perpetual easement of 2.18 acres for the construction of a road. When it terminated its operations, Jordan gave no notice to plaintiff that its agreement with O'Connell had been canceled nor did Jordan at any time communicate to plaintiff any rescission or termination of the contract with her. One of Jordan's employees did, however, advise plaintiff's son that the contract had been breached by plaintiff. When Jordan attempted to conclude its contract obligations in January 1965 by paying plaintiff on the basis of peat actually removed without reference to the minimum, plaintiff refused the tender and demanded performance under the contract. There was no response to that demand.

The court concluded with the following findings:

"That no evidence was offered or received to prove the defendants' counter-claim for damages and the evidence was insufficient to support defendants' allegation of mutual termination of the contract.

"That no evidence was presented by the defendant to show the amount of damages, if any, resulting from the construction operations on the Trailmobile tract."

As conclusions of law, the court held that plaintiff's sale of 10 acres and the perpetual easement to the village constituted a substantial breach of the contract. As further conclusions, the court adjudged:

"That upon the breaches of the contract by the plaintiff, the defendant elected to continue operations on the property and remains liable for performance under the contract rather than to rescind the contract.

"That defendant did not rescind the contract and there was

no mutual termination of the contract either by agreement or conduct of the parties."

The court then awarded Jordan $5,460 which it reached by using a formula both parties agree is untenable. It was not proposed or advocated at the trial or on appeal by either party.

1. The appeal from the judgment raises only the issue of whether the findings of fact support the conclusions of law. As to the award of $5,460, it is conceded they do not. The only remaining issue, therefore, is whether as a matter of law the findings compel the conclusion that plaintiff's conduct terminated the contract and thereby relieved Jordan of its obligation to perform.

2. No evidence whatever was introduced by Jordan to prove its damages in support of its counterclaim. Defendants tried the case on the theory that Jordan was liable only for peat which was actually removed without reference to the minimum specified in the contract. In the absence of evidence of damages, it was clearly error for the trial court to award an offset.

3. Defendants make a point of the fact that sometime in 1964 plaintiff sold to her son all but 4 acres of the tract then remaining. It is claimed that she was thereby disabled from herself performing. We find no merit in this contention. Throughout all of these negotiations plaintiff's son represented her and took title with full knowledge of the contract. He was not thereafter in a legally tenable position to repudiate the contract.

4. The fact that the conveyances for a roadway and for the construction of a building in the southern end of the property limited the area where Jordan could remove peat did not on this record render the contract impossible of performance. There is nothing to show that Jordan exhausted the supply of peat which remained available to it. No persuasive reason is advanced for its terminating its operations and it is noteworthy that O'Connell continued to remove peat under his agreement with Jordan. Consequently, we hold that the court's finding of a breach of contract by plaintiff did not support a conclusion that the contract was

terminated by operation of law without evidence that Jordan was denied practical access to the remaining peat.

5. We have recently held that when a contract is materially breached the aggrieved party is required to give the other party unequivocal notice that it no longer considers the agreement to be in effect. Dunkley Surfacing Co. v. George Madsen Const. Co. 285 Minn. 415, 173 N. W. (2d) 420. The court here found that Jordan gave no notice of rescission to plaintiff, and defendants make no claim otherwise. The court was justified in concluding that the contract was not rescinded or mutually terminated either by agreement or by conduct of the parties. The matter is therefore reversed and remanded with directions to enter judgment in favor of plaintiff in the sum of $10,099 plus interest from the dates due under the contract. No costs shall be allowed either party.

Reversed and remanded.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.